## STATE v. LEON KERN.[1]

### June 25, 1915.

### Nos. 19,284—(12).

**Violation of city ordinance.**

In construing a city ordinance "to regulate and restrain porters, runners, agents and solicitors for boats, vessels, stages, cars, public houses or other establishments," the rule of *ejusdem generis* applies, and the acts, upon proof of which the defendant herein, the proprietor of a small clothing store, was convicted, are *held* not to be within the mischief intended to be prevented by the ordinance.

Defendant was charged with violation of an ordinance of the city of Minneapolis, tried in the municipal court of Minneapolis, convicted and sentenced, Charles L. Smith, J., to pay a fine of $10 or in default thereof to be committed to the workhouse for the period of 10 days. From the judgment entered pursuant to the sentence, defendant appealed. Reversed.

*Mead & Bryngelson,* for appellant.

*C. D. Gould* and *John T. O'Donnell,* for respondent.

[1] Reported in 153 N. W. 311.

SCHALLER, J.

Defendant was convicted in the municipal court of ·the city of Minneapolis of violating the provisions of an ordinance of that city relating to "porters, runners, agents and solicitors for boats, vessels, stages, cars, public houses or other establishments."

The defendant on November 27, 1914, was the owner of a small clothing and men's furnishing store, situate at number 128 Hennepin avenue in the city of Minneapolis. Between the hours of ten o'clock a. m. and noon of that day the prosecuting witness, one George Woessner, was walking down Hennepin avenue. He passed slowly in front of defendant's place of business and seemingly was examining the goods displayed in defendant's show windows. Defendant spoke to Woessner, stopped him, asked him if he wished to buy any goods and told him that he had "cheap bargains to-day." Woessner said he did not care to buy anything, but defendant insisted, so Woessner went into the store where the defendant showed him an overcoat and solicited him to buy. Woessner declined and went out. Defendant, when he first spoke to Woessner, was standing on the sidewalk in front of his place of business about six feet from the front door. On proof of these facts, defendant was convicted of the offense of "wilfully, unlawfully and wrongfully, and upon a public street, to-wit, in front of 128 Hennepin avenue, ask[ing] and solicit[ing] this complainant to buy a fur coat from that certain store located at No. 128 Hennepin avenue, which said store was then and there an establishment operated for the accommodation of the traveling public and for the carrying on of a lawful business, to-wit, the sale of clothing and other merchandise, at No. 128 Hennepin avenue, said complainant being then and there a traveler, and he, the said. John Doe, not having theretofore obtained a license from the city of Minneapolis so to do, contrary to the provisions of an ordinance passed by the city council of the city of Minneapolis, and against the peace and dignity of the state of Minnesota  *  *  *."

The ordinance, so far as here material, provides:

"PORTERS, RUNNERS, AGENTS AND SOLICITORS.

"An ordinance to regulate and restrain porters, runners, agents

and solicitors for boats, vessels, stages, cars, public houses or other establishments within the city of Minneapolis.

"The City Council of the city of Minneapolis do ordain as follows:

"Section 1. That no person shall, upon any public street, alley or public grounds within the city of Minneapolis, act as porter, runner, agent or solicitor for any boat, vessel, stage, car, public house or other establishment operated either for the accommodation of the traveling public or for the carrying on of any lawful business, or in any manner, upon any public street, alley or public grounds within the city of Minneapolis, ask or solicit the patronage or custom of any traveler or other person for any such boat, vessel, stage, car, public house or other establishment without first having obtained a license so to do.

"Sec. 2. 'Any person of good moral character, on application to the City Comptroller, accompanied with a receipt from the City Treasurer to the effect that such person has paid to said City Treasurer the sum of Two Hundred Dollars as the annual amount to be paid for a license to do and perform the business of such porter, runner, agent or solicitor, shall be entitled to a license for such purpose.

"Sec. 3. Each and every license hereafter granted and issued under the provisions of this ordinance shall expire on the first Monday of May, next following the granting and issuance of the same, and all such licenses, the application for which shall be made after the commencement of any license year, shall be issued for the period from the date of the application therefor to the first Monday of May next following the issuance of the same upon the payment by the applicant for any such license of a proportionate part and amount of the annual license fee herein established and required for the same.

"Sec. 4. The owner or proprietor of any boat, vessel, stage, car, public house or other establishment specified in section one hereof, who shall have obtained a license for any porter, runner, agent or solicitor in his employ, may, at his option, have such license revoked and be entitled to another license for the remaining portion of the

130 M.—13.

year for which such license shall have originally been granted, without paying an additional charge or fee therefor:

"Provided, that no such license shall be changed or transferred to any other boat, vessel, stage, car, public house or other establishment without an order from the Mayor or the City Council for that purpose first had and obtained.

"Sec. 5. That each and every porter, runner, agent or solicitor for any boat, vessel, stage, car, public house or other establishment specified in Section one hereof, to whom a license is granted in conformity with the requirements of this ordinance shall receive from the City Comptroller, a badge, on which shall be inscribed his number and proper descriptive words, which badge shall be worn by any such licensee while engaged in the occupation for which he may be licensed, upon the breast of his outside coat or upon the front of his hat or cap, conspicuously exposed so as not to be hidden either by design or accident.

"Sec. 6. It shall be unlawful for any porter, runner, agent or solicitor to carry on his business as such porter, runner, agent or solicitor or to in any manner act in that capacity, or to ask or solicit patronage or custom of any traveler or other person for any boat, vessel, stage, car, public house or other establishment, specified in Section one hereof, upon any of the following places or streets in the city of Minneapolis, to-wit:

"(1) The depots or stations, or depot or station grounds, platforms or other buildings of any railroad company; provided that nothing herein contained shall apply to any ticket agent or passenger solicitor of any steam railway company acting as such upon premises owned and exclusively occupied by such company.

"(2) High Street, between Nicollet Avenue and First Avenue south; Hennepin and Nicollet Avenue, between Second Street and the Mississippi River; Hennepin Avenue between the northeast line of Second Street and the northeast line of Washington Avenue.

"(3) Washington Avenue, between Third Avenue south and Fifth Avenue south; Third Avenue south, between Washington Avenue and Second Street.

"(4) Washington Avenue, between Third Avenue north and Fifth Avenue north.

"(5) Washington Avenue, between Ninth Avenue south and Eleventh Avenue south.

"(6) Washington Avenue, between Nicollet Avenue and Third Avenue south. * * *

"(7) First Avenue south between Second Street and Washington Avenue.

"Sec. 7. No porter, runner, agent or solicitor shall at any time or place when engaged in his employment, make any unusual noise or disturbance, or make use of profane, obscene or boisterous language, or follow up, touch or take hold of any person, or of any person's baggage without the consent of such person expressly given, or vex, or disturb, or interfere with, or harass or annoy any person or persons passing along or in the public streets of said city."

Several questions are raised on this appeal, but it will be necessary to discuss but one, which is whether or not the acts of the defendant were within the mischief prohibited by the ordinance.

Defendant was apparently conducting a lawful and useful business in a quiet and orderly manner. The evidence proves that he solicited for business on the sidewalk. The ordinance is aimed at certain classes of solicitors and kinds of business. It protects strangers and the traveling public generally from such solicitations and solicitors. It does not expressly mention others, nor does it prevent the solicitation of business for establishments other than those mentioned in the ordinance.

It expressly prohibits soliciting of business even by the licensed porters, runners, agents or solicitors at certain places in the city, such as depots or stations, station grounds or platforms or any buildings of any railroad company. It also forbids the making of any unusual noise or disturbance while engaged in the business of porter, runner, agent or solicitor. It also forbids the use of profane, obscene or boisterous language by porters, runners, agents or solicitors; it forbids the following up and taking hold of any person or any person's baggage; it forbids the vexing, interfering with or disturbing of any

person passing along or in the public streets by such porters, runners, agents or solicitors.

The acts proved against the defendant herein are not within the mischief intended to be prevented by the ordinance. Its title and its context point to the purpose of preventing the annoyance of the traveling public by porters, runners, agents and solicitors, requiring these persons, even though licensed, to do and perform their business only in such manner and at such places prescribed in the ordinance.

We hold that in this case the rule of *ejusdem generis* applies. Berg v. Baldwin, 31 Minn. 541, 18 N. W. 821; State v. Shaw, 39 Minn. 153, 39 N. W. 305; Rhone v. Loomis, 74 Minn. 200, 77 N. W. 31; State v. Chamberlain, 112 Minn. 52, 127 N. W. 444, 30 L.R.A.(N.S.) 335, 21 Ann. Cas. 679.

Judgment reversed.